This action began when Billy R. Hornsby (employee) filed a workmen's compensation claim against Elmore County and Elmore County Commission (employer). The employee claimed that he developed an occupational disease out of, and in the course of, his employment. After a hearing, the trial court found that the employee was totally and permanently disabled and was entitled to receive workmen's compensation benefits and medical expenses. The employer appeals.
The dispositive issue on appeal is whether there was any evidence establishing that prolonged sitting is a hazard in excess of those ordinarily incident to employment in general or peculiar to the occupation of a deputy sheriff.
The facts, in part, are as follows: The employee worked for the Elmore County sheriff's department for approximately 14 years. His basic duties were enforcing the law, serving civil papers, transporting mental patients, and engaging in arrest procedures, all of which involve, in some part, driving a patrol car.
The medical testimony indicates that the employee suffers from advanced arteriosclerotic peripheral vascular disease, more commonly known as hardening of the arteries. As a result of this disease, grafts were surgically placed in the employee's legs to resolve his initial problem of decreased circulation and narrowing of the arteries.
We would note that it is undisputed that the employee's hardening of the arteries was not caused by his job as a deputy sheriff. Further, the testimony indicates that sitting does not worsen this disease. What the employee contends, however, is that the prolonged sitting required by his job caused him to develop clots and occlusions in the grafts in his leg, and he is therefore entitled to compensation. We disagree.
Section 25-5-110, Ala. Code 1975, as set out below, sets out the requirements for recovery based on an occupational disease:
 "(1) OCCUPATIONAL DISEASE. A disease arising out of and in the course of employment, other than occupational pneumoconiosis and occupational exposure to radiation as defined in articles 5 and 7, respectively, of this chapter, which is due to hazards in excess of those ordinarily incident to employment in general and is peculiar to the occupation in which the employee is engaged but without regard to negligence or fault, if any, of the employer. A disease (including, but not limited to, loss of hearing due to noise) shall be deemed an occupational disease only if caused by a hazard recognized as peculiar to a particular trade, process, occupation or employment as a direct result of exposure over a period of time to the normal working conditions of such trade, process, occupation or employment. The term 'occupational disease' shall not include accidents within the meaning of articles 3, 5 and 7 of this chapter.
 "(2) CONTRACTION OF AN OCCUPATIONAL DISEASE. Such term shall include any aggravation of such disease without regard to the employment in *Page 622 
which the disease was contracted. (Acts 1971, No. 668, p. 1379.)"
In order for a disease to be occupational, it must be due to hazards which are (1) in excess of those ordinarily incident to employment in general and (2) different in character from those found in the general run of occupations. Dodson v. Atrax Div.of Wallace-Murray Corp., 437 So.2d 1294 (Ala.Civ.App. 1983).
It appears to this court that any prolonged sitting would contribute toward repeated occlusions in the graft in the employee's leg. The employee's doctor so testified to the fact. However, we do not find any evidence in the record to conclude that "sitting," as required of a deputy sheriff in driving a motor vehicle, fits under the requirements of an occupational disease. There is no evidence that it is a hazard in excess of those ordinarily incident to employment in general and different in character from those found in the general run of occupations. Dodson, supra. Therefore, we must reverse the trial court.
We point out that we are mindful that the standard of review in a workmen's compensation case is very narrow. Our review here is limited to questions of law and to an examination of the evidence to determine if there is any legal evidence to support the findings of the trial court. Dodson, supra. We have considered the evidence and the trial court's findings, and we have concluded that there is no reasonable view of the evidence that supports the conclusion of the trial court that the employee's "disease" was an occupational disease. In view of this finding, we pretermit other issues raised by the employer.
This case is due to be reversed and remanded for entry of a judgment in favor of the employer.
REVERSED AND REMANDED.
BRADLEY, P.J., and HOLMES, J., concur.