752 So.2d 505 (1999)
Geraldine R. ZEANAH
v.
STEWART ANIMAL CLINIC, P.C.
2981006.
Court of Civil Appeals of Alabama.
November 5, 1999.
*506 David Madison Tidmore of Cory, Watson, Crowder & DeGaris, P.C., Birmingham, for appellant.
Wade S. Anderson of Joe C. Carroll & Associates, Birmingham, for appellee.
CRAWLEY, Judge.
Geraldine Zeanah ("the worker") sued her employer, Stewart Animal Clinic, P.C., for workers' compensation benefits, alleging an occupational disease or injury to a hand and arm, her neck, and both knees. The employer answered, alleging, as to the hand-and-arm injury, that the worker had failed to give notice, and, as to the remaining injuries, that they did not arise out of the worker's employment. After an ore tenus proceeding, the circuit court entered a judgment for the employer; the worker appeals.
The worker was employed for 12 years as a clerk/receptionist in a veterinarian's office. Her duties included greeting customers, answering the telephone, typing, filing, and billing. The worker testified that she was required to stand up and sit down repeatedly, to squat, bend, and kneel *507 when she was filing, and to type on a computer keyboard. She experienced pain in her neck, right hand and arm, and both knees, which she attributed, respectively, to her telephone duties, her typing, and her getting up and down to greet customers, as well as to her stooping and kneeling to do filing. The worker testified that she did not have an "accident" at work that triggered any of her injuries or conditions; instead, she said, her injuries were caused over time by repetitive motion or cumulative stressors at work, and she said that the pain from all of her ailments became progressively worse so that, eventually, she could no longer work. Compare Dun & Bradstreet Corp. v. Jones, 678 So.2d 181 (Ala.Civ.App.1996) (noting that the worker alleged that her injuries "were not the result of a single `accident,' but were instead... caused over time by continuous exposure to cumulative stressors at the workplace"); BE & K, Inc. v. Weaver, 743 So.2d 476, 480 (Ala.Civ.App.1999) (commenting that the worker "d[id] not contend that he sustained his injuries as a result of an `accident'; rather, he contend[ed] that his injuries occurred as a result of ... continuous lifting ... over a period of 5 to 10 days").
The worker sought and received medical treatment from seven physicians over a two-year period, eventually going to part-time employment and then leaving work entirely on March 30, 1996. Two months earlier, on January 22, 1996, Dr. Perry Savage had diagnosed the worker as suffering from carpal tunnel syndrome and ordered her to wear a wrist splint. The worker wore the splint to work and told her employer that she had to "rest the wrist because of [her] handwriting and typing duties," but she could not recall telling her employer that she thought the carpal tunnel syndrome was related to her employment. On February 27, 1997, the worker's attorney wrote the employer, stating the worker's claim that her carpal tunnel syndrome was caused by her job duties. On March 7, 1997, almost a year after she left her employment, the worker completed and left with her employer an "Employer's First Report of Injury Form" indicating that she considered her carpal tunnel syndrome a work-related injury or condition.
In addition to carpal tunnel syndrome, the worker was diagnosed as suffering from chondromalacia (a softening of the cartilage below the kneecap), osteoarthritis (degenerative disk disease) in her cervical spine, and fibromyalgia (soft-tissue pain with trigger-point tenderness in the spinal region). The depositions of three of the seven physicians the worker consulted Dr. Roland Rivard, Dr. Thomas Traylor, and Dr. George Hillare included in the record. In addition, portions of the worker's medical records from four other physicians are contained in the record.
The circuit court made the following findings of fact and conclusions of law:
"1. [The worker] did not give notice of the claim for right carpal tunnel syndrome as required by law.
"2. [The worker's] osteoarthritis is not an occupational disease and was not a preexisting condition which was aggravated by her work.
"3. There was no accident within the meaning of the Alabama Workers' Compensation Act which has caused the severe pain in the knees complained of by [the worker].
"4. There is insufficient evidence to establish that [the worker's] condition resulted from a hazard that is peculiar to the job of clerk/receptionist or that the risk is any greater than any other job which requires some squatting or kneeling."
We will address the circuit court's findings and conclusions in the order in which they were stated.

Notice
Section 25-5-78, Ala.Code 1975, requires an injured employee to give written notice to his employer within five days *508 of an accident or occurrence for which he is claiming compensation. The statute further provides that no compensation is payable if written notice is not given within 90 days. For accidents or occurrences involving cumulative-stress disorders, the date of the worker's last exposure to the stressor is considered the date of the injury. See Dun & Bradstreet Corp. v. Jones, supra. Here, the worker's last exposure was March 30, 1996, and her first written notice of the injury was given 11 months later, on February 27, 1997. The worker presented evidence indicating that she had given her employer earlier oral notice of the injury, but she could not specify when the oral notice was given. The employer denied receiving any oral notice. The trial court resolved this conflict in the evidence in favor of the employer. It is not the province of this court to resolve evidentiary conflicts, but to determine whether the findings of the trial court are supported by substantial evidence. Pearson v. Reflector Hdw. Corp., 710 So.2d 443, 445 (Ala.Civ. App.1997). The trial court's finding on this issue is supported by substantial evidence.

Occupational Disease
In determining that the worker's osteoarthritis was "not an occupational disease," the court correctly applied the law to the facts. The record supports the court's related finding that there was "insufficient evidence to establish that [the worker's] condition resulted from a hazard that is peculiar to the job of clerk/receptionist or that the risk is any greater than any other job which requires some squatting or kneeling."
In order for the disease to be "occupational," the worker must be exposed by his or her employment to a hazard in excess of those ordinarily incident to employment in general and different in character from those found in the general run of occupations. See § 25-5-110(4), Ala. Code 1975; Young v. City of Huntsville, 342 So.2d 918 (Ala.Civ.App.1976), cert. denied, 342 So.2d 924 (Ala.1977). The worker presented no evidence indicating that the clerical duties of the veterinary office where she worked exposed her to hazards in excess of those ordinarily incident to employment in general or different in character from those found in the general run of occupations. Cf. Bruno's, Inc. v. Lawson, 709 So.2d 1296 (Ala.Civ.App.1998) (holding that bookkeeper's prolonged standing did not qualify as an occupational hazard peculiar to bookkeeper's profession); Smith v. Colonial Bank, 607 So.2d 1265 (Ala.Civ.App.1992) (holding that bank teller's repeated kneeling and squatting was not an occupational hazard peculiar to teller's employment); Elmore County v. Hornsby, 533 So.2d 620 (Ala.Civ.App.1988) (holding that ailment brought about by deputy sheriff's prolonged sitting did not meet the requirements of an occupational disease).

Preexisting Condition Aggravated by On-the-Job Injury
In determining that the worker's osteoarthritis "was not a preexisting condition which was aggravated by her work," and in making the related finding that "[t]here was no accident within the meaning of the Alabama Workers' Compensation Act which has caused the severe pain in the knees complained of by [the worker]," the court correctly applied the law to the facts. The worker admitted that she did not have an "accident" at work that triggered (or aggravated) any of her injuries or conditions; instead, she said, her injuries were caused over time by repetitive motion or cumulative stressors at work. The holding that a worker's preexisting condition will not prevent him from receiving compensation for an on-the-job injury that combines with a preexisting condition to cause disability, if the worker was able to perform his duties before the injury, is necessarily limited to those cases that involve an "injury" or "accident." See, e.g., Ex parte Bratton, 678 So.2d 1079 (Ala.1996); Ex parte Lewis, 469 So.2d 599 *509 (Ala.1985); Ingalls Shipbuilding Corp. v. Cahela, 251 Ala. 163, 36 So.2d 513 (1948) (superseded on other grounds by statute; see Tit. 26, § 262(a), Ala.Code 1940); Graham v. American Cyanamid Co., 634 So.2d 581 (Ala.Civ.App.1994).

Gradual Deterioration or Cumulative Physical Stress Disorder
Section 25-5-81(c), Ala.Code 1975, provides:
"[I]njuries which have resulted from gradual deterioration or cumulative physical stress disorders ... shall be deemed compensable only upon a finding of clear and convincing proof that those injuries arose out of and in the course of the employee's employment."
In order to show that her injuries were compensable as "cumulative physical stress disorders," the worker was required to prove, by clear and convincing evidence, that her injuries arose out of and in the course of her employment. § 25-5-81(c), Ala.Code 1975.
Although the worker's complaint did not specifically allege that she suffered from a "gradual deterioration" or "cumulative physical stress disorders," that issue was clearly tried by the express or implied consent of the parties. See Rule 15(b), Ala. R. Civ. P. The trial court's judgment, however, makes no finding or conclusion as to this theory of recovery. As our supreme court stated in a similar case:
"We could determine here whether [the worker] met her burden in this case, but we believe that justice would best be served by remanding this case with instructions for the trial court to apply the law as set out in this opinion to the particular facts of this case."
Ex parte Russell Corp., 725 So.2d 264, 267 (Ala.1998).
The judgment is affirmed except insofar as it denied recovery on the worker's "gradual-deterioration" or "cumulative-physical-stress-disorder" theory of recovery. Insofar as it relates to that theory of recovery, the judgment is reversed. We remand this cause with instructions for the circuit court to make a finding whether the worker met her burden of proving by clear and convincing evidence that her injuries arose out of and in the course of her employment and to enter such further orders as the law requires.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
YATES, J., concurs in the result.
MONROE, J., concurs in the result only.
ROBERTSON, P.J., and THOMPSON, J., concur in part and dissent in part.
THOMPSON, Judge, concurring in part and dissenting in part.
I dissent from that portion of this court's judgment remanding this case because I do not believe a remand is necessary. As noted in the main opinion, in its judgment the trial court found, in part, that there was
"insufficient evidence to establish that [the worker's] condition resulted from a hazard that is peculiar to the job of clerk/receptionist or that the risk is any greater than any other job which requires some squatting or kneeling."
752 So.2d at 508.
In determining that this matter should be remanded for an express finding on the worker's claim that she suffered a work-related, cumulative-trauma injury, the main opinion relies upon Ex parte Russell Corp., 725 So.2d 264 (Ala.1998). I find it significant to recognize that in Ex parte Russell our supreme court was reviewing a judgment finding that the worker had suffered a work-related injury. Because the worker in Ex parte Russell had suffered a cumulative-stress injury, our supreme court concluded that it was imperative that the trial court make an express finding that the worker had met her required burden of proving by clear and convincing *510 evidence that her injury was work-related. 725 So.2d at 267.
There is an important distinction to be made between the facts presented in Ex parte Russell and those in the present case. In the present case, the trial court found that the worker had not suffered a work-related injury. Specifically, it found that she had not given her employer the required notice of her claim for right carpal tunnel syndrome; it found that her osteoarthritis was not an occupational disease and was not a preexisting condition that had been aggravated by her work; it found that there had been no "accident," within the meaning of the Alabama Workers' Compensation Act, that had caused the worker's knee injury; and it found "insufficient evidence" to support her claim that her condition was the result of a hazard peculiar to the job of clerk/receptionist.
It may be the better practice for the trial court to recite that the claimant has failed to meet his or her required burden by presenting "clear-and-convincing evidence." However, because the trial court found "insufficient" evidence to support her claim, it is axiomatic that it found that she failed to meet the "clear-and-convincing" standard of proofthe most stringent standard of proof for any claim under the Workers' Compensation Act.
Because I find the trial court's findings sufficient, I would affirm the judgment of the trial court in its entirety.
ROBERTSON, P.J., concurs.